Argued April 21, opinion October 30, reconsideration denied
December 19, 1978, petition for review allowed May 1, 1979

# MEEKER et al, *Appellants,*

*v.*

# BOARD OF COMMISSIONERS OF CLATSOP COUNTY, *Respondents,*

# PAULEY, *Intervenor-Respondent.*

## (No. CC 77-303, CA 9164)

585 P2d 1138

Robert E. Stacey, Jr., Portland, argued the cause and filed the briefs for appellants.

W. Louis Larson, Astoria, argued the cause and filed the brief for respondents.

Lawrence M. Dean, Astoria, argued the cause for Intervenor-Respondent. On the brief was Jeanyse R. Snow, Astoria.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

TANZER, J.

## TANZER, J.

Petitioners in this writ of review proceeding appeal from an order of the circuit court affirming the county commissioners' approval of a tentative plat for the subdivision of 82 acres of agricultural land along the Nehalem River in Clatsop County. The issue is whether the proposed subdivision complies with statutes and state regulations pertaining to preservation of agricultural lands.

The proposed subdivision would create seven parcels ranging in size from 8 to 20 acres.[1] The planning commission initially considered the subdivision application as a proposal for suburban-residential use, and after several hearings it approved the tentative subdivision plat in November, 1976. Petitioners appealed to the Board of County Commissioners (Board), which remanded the matter to the planning commission to consider whether the proposed subdivision would comply with the Agricultural Lands Goal (Goal #3) of the statewide planning goals and guidelines adopted by the Land Conservation and Development Commission (LCDC). The planning commission found that the proposed subdivision would violate Goal #3 and denied the application.[2] On appeal by the developer, the Board received additional evidence and found that the proposal complied with Goal #3 and applicable statutes and approved the tentative subdivision plat subject to the conditions designated by the planning commission in its earlier approval.

The parties agree that the acreage in question is agricultural land and is subject to the Goal #3

---

[1]There is some confusion in the record concerning an attempt to withdraw the smallest of the seven lots from the application for tentative approval of the subdivision plat. Whether there are six or seven lots does not affect our decision.

[2]The planning commission found that the existing commercial agricultural enterprise in the area was beef raising, that the proposed lots were too small for the continuation of that enterprise, and that the proposed subdivision did not meet the requirements of ORS 215.213(3) for nonfarm dwellings in an exclusive farm use zone.

requirement that it be preserved for agricultural use.[3] Petitioners argue that the lots in the proposed subdivision are too small to constitute farm use as contemplated by Goal #3 and ORS ch 215 and are actually rural residential homesites which do not meet the statutory standards for nonfarm uses in an agricultural district.[4] The Board concluded that full-time farming on the parcel was not economically viable and that subdividing it into smaller, part-time farms would promote more intensive farming and greater overall production than would the maintenance of larger, nonremunerative, idle farm plots. At the root of this case, it is that conclusion of the Board which is in issue.

Goal #3 provides in part:

"Agriculture [*sic*] lands shall be preserved and maintained for farm use, consistent with existing and future needs for agricultural products, forest and open space. * * * Such minimum lot sizes as are utilized for any farm use zones shall be appropriate for the continuation of the existing commercial agricultural enterprise within the area. OAR 660-15-000.

Goal #3 incorporates the definition of "farm use" from ORS 215.203(2)(a):

"* * * 'farm use' means the current employment of land including that portion of such lands under buildings supporting accepted farming practices for the purpose of obtaining a profit in money by [engaging in agricultural activity] * * *."

■ ■ Petitioners contend that the Board's findings are based on an erroneous interpretation of Goal #3 and are not supported by substantial evidence in the record. The Board found that the proposed smaller acreage lots would be comparable to and compatible

---

[3] Goal #3 requires agricultural land to be placed in an exclusive farm use (EFU) zone, subject to exceptions that are not relevant here. Though Clatsop County has not amended its zoning ordinance to place the subject parcel in an EFU zone, the parties have treated it as though it were zoned EFU, and we follow that treatment.

[4] The parties agree that the subdivision is not a permitted nonfarm use under ORS 215.213.

with other existing agricultural uses in the area. It also found that a large farm unit comprising the area of development would not be economically viable and that smaller units, as proposed, would facilitate greater agricultural usage in the foreseeable future, just as in the past and at present. The specific relevant findings in the Board's order are as follows:

"1. That the proposed use does not constitute urbanization because the evidence presented demonstrated that the proposed sizes of lots within the subdivision are compatible with the sizes of other agricultural land holdings in the area and that such subdivision of the land a resulting use thereof will not interfere with the agricultural activities in the area based upon the testimony of the witnesses presented by the Appellant.

"* * * * *

"4. That the testimony of the witnesses, in particular the County Farm Extension Agent, was convincing that the proposed development will provide greater agricultural utilization of the land than the present site due to the economics of farming in the recent past, the present, and what is indicated for the future.

"5. That the general area in which the proposed development exists has proven through the past number of years that a farm of the size of the proposed development held in one farm unit is not of a conducive size to result in a viable commercial agricultural enterprise due to the economics of farming and that reduction in size permits greater intensification of use with less requirements for capital expenditure in the form of equipment and land cost, and thereby results in greater production. This phenomena [*sic*] is demonstrated by the evidence of the witnesses that the proposed lot sizes are consistent in size with a majority of the existing viable commercial agricultural enterprise units within the area of the Nehalem Valley.

"6. That the LCDC Goals pertaining to agricultural land did not provide a minimum lot size and that the testimony presented by the parties demonstrates that the proposed sizes of lots within the subdivision are consistent with the existing viable agricultural units within the area and therefore, are appropriate for the

[ 703 ]

preservation of the agricultural lands in this area of Clatsop County.

"7. The contentions of the parties pertaining to subparagraph 3 of ORS 215.213 concerning non-farm single family use does not apply because this development will be agricultural in nature.

"* * * * *

"9. That the definition of commercial means that the band [*sic*] unit produces more farm products than are consumed upon the land. Said definition was presented by staff and represented to be that of a recommendation from the LCDC staff members and representative to this County, Mr. Neil Coenen.

"10. That the testimony of the Clatsop County Farm Extension Agent that Clatsop County land in the Nehalem Valley, though of soil Class 1 through 4, is not conducive to large agricultural enterprise due to inadequate weather conditions is concurred in by this Board. Such conclusion is further borne out by the fact that there are no farm implement dealers within Clatsop County, and as a general rule, all agricultural areas typically have farm implement dealers in the vicinity.

"11. That the proposed utilization of the land will preserve the farm land for the future because it will enable people to retain land due to the reduction of the amount of the investment necessary to own the land and to effectively use it for agricultural pursuits * * *.

"* * * * *."

The Board's findings support its reasoned conclusion that the proposed subdivision will serve the policies of Goal #3 and ORS 215.243[5] more effectively

---

[5] ORS 215.243 provides:

"The Legislative Assembly finds and declares that:

"(1) Open land used for agricultural use is an efficient means of conserving natural resources that constitute an important physical, social, aesthetic and economic asset to all of the people of this state, whether living in rural, urban or metropolitan areas of the state.

"(2) The preservation of a maximum amount of the limited supply of agricultural land is necessary to the conservation of the state's economic resources and the preservation of such land in large blocks is necessary in maintaining the agricultural economy of the state and for

than would retention of the acreage in a single parcel. Although there were conflicts in the evidence before the Board, there is substantial evidence in the record to support the Board's findings. Numerous witnesses testified that the predominant agricultural enterprise in the area is part-time farming on parcels of 20 acres or less and that all the larger farms except petitioner Meeker's farm had ceased production in recent years because they were unprofitable. The smaller farms produce food for home consumption and a small profit, but they do not provide enough income to support a family. The parcel in question has not been operated as a full-time farm for almost ten years, and it has produced only a meager crop of hay in the past few years. The county extension agent testified that a full-scale farming operation on a parcel like the subject property could not produce enough income to justify the capital expenditure needed for machinery, but that farming smaller parcels would result in increased agricultural production because the cultivation could be more intense. He also stated that the future needs for agricultural land in Clatsop County would be for small parcels of land because larger farms were not economically viable. In sum, there is substantial evidence to support the Board's findings of fact, and therefore we are bound by them. ORS 34.040(3); *Green v. Hayward,* 275 Or 693, 702, 552 P2d 815 (1976).

---

the assurance of adequate, healthful and nutritious food for the people of this state and nation.

"(3) Expansion of urban development into rural areas is a matter of public concern because of the unnecessary increases in costs of community services, conflicts between farm and urban activities and the loss of open space and natural beauty around urban centers occurring as the result of such expansion.

"(4) Exclusive farm use zoning as provided by law, substantially limits alternatives to the use of rural land and, with the importance of rural lands to the public, justifies incentives and privileges offered to encourage owners of rural lands to hold such lands in exclusive farm use zones."

Petitioners also contend that the Board improperly construed the applicable law, ORS 34.040(4), in that its order misconstrued the Goal #3 requirements by approving establishment of part-time farms in an exclusively agricultural zone. The parties' disagreement focuses on the term "commercial" as used in the Goal #3 requirement that minimum lot sizes in farm use zones be "appropriate for the continuation of existing commercial agricultural enterprise within the area." Petitioners argue that a commercial farm is one that "supports a family, if not hired hands," while repondents contend that a farm is commercial if it yields agricultural products which are sold for a profit. Petitioners' position might have merit if it were possible to support a family by farming the undivided parcel, but we are bound by the Board's valid finding that it is not.[6]

It is unnecessary in this case to draw the definitional limits of the term "commercial" as used in Goal #3, because the Board lawfully found that for now and the foreseeable future the proposed subdivision would be more agriculturally productive than a larger farm

---

[6] In *Rutherford v. Armstrong,* 31 Or App 1319, 1326-27, 572 P2d 1331 (1977) *rev den* (1978), in considering whether a five-acre parcel came within the nonfarm use exceptions to exclusive farm use that are specified in ORS 215.213(3), we held that "farm use" as defined in ORS 215.203 does not require that the farm in question be economically self-sufficient as long as it is capable of profitable agricultural production. *See also, 1000 Friends v. Benton County,* 32 Or App 413, 575 P2d 651, *rev den* 584 Or 1371 (1978).

Petitioners' reliance on the LCDC decision in *1000 Friends v. Marion County,* LCDC No. 75-006, for the proposition that Goal #3 does not permit part-time farms in an EFU zone is misplaced. That opinion states in dictum: "The locations of acreage homesites on agricultural land can not be justified simply on the basis that they relate to farm use in some peripheral sense." That case involved the legislative rezoning of 23,000 acres in the East Salem area, of which less than half received an EFU designation; 11,600 acres were zoned for agricultural-residential use in three- to five-acre parcels. This case involves individual consideration of an 82-acre parcel which the Board found would become more productive if subdivided than if retained as a single parcel. The principal issue in the *Marion County* case was whether Goal #3 and ORS ch 215 mandated EFU zoning for those 11,600 acres, while in this case the county has agreed that the EFU zoning requirement applies to the subject parcel. Thus, LCDC's reasoning in the *Marion County* case is inapplicable to the facts of this case.

and that the proposed smaller farms are consistent with existing farming practices in the area. Assuming for argument that Goal #3 requires that minimum lot sizes in an EFU zone be such as will maximize agricultural production, as opposed to merely accommodating agriculture, that standard has been met in this case.

██ Petitioners also contend that the proposed subdivision violates the statutory policy expressed in ORS 215.243 that "the preservation of [agricultural] land *in large blocks* is necessary in maintaining the agricultural economy of the state and for the assurance of adequate, healthful and nutritious food for the people of this state and nation." (Emphasis supplied.) The statute does not require preservation of large blocks of land for the sake of largeness. Rather the requirement necessarily applies where it will promote agricultural use and production. It does not mandate such preservation where, as found by the Board in this case, doing so would produce a result contrary to the statutory policy. This interpretation of the statute is consistent with the absence in the statutory scheme and the goals of a statewide minimum size for farms in an EFU zone. Moreover, ORS 215.263(1) and (2) provide for discretionary review by the governing body of the county of "any proposed division of land included within an exclusive farm use zone resulting in the creation of one or more parcels of 10 or more acres in size" and for mandatory review of divisions resulting in parcels of less than 10 acres. The two statutes taken together thus recognize the possibility that lots of 10 acres or less may be an appropriate means of furthering statutory policy in an exclusive farm use zone. LCDC has also recognized this: "A statewide minimum lot size would be impractical. If a local minimum lot size is established, it is to provide the acreage necessary for the continuance or creation of a viable farm unit which is appropriate for the type of farming practiced in the area." LCDC publication, *Common Questions About Goal #3,* p 8.

Because the Board reasonably found that the proposed subdivision constitutes the best practicable agricultural use of the 82 acres in question and because nothing in Goal #3, ORS ch 215 or the decisions interpreting those provisions prohibits lots of the proposed size in an exclusive farm use zone, we affirm the trial court's dismissal of the writ of review.

Affirmed.