Argued and submitted November 1, 2006, decisions of Court of Appeals affirmed in part and reversed in part; decisions of Land Use Board of Appeals reversed, and cases remanded to Land Use Board of Appeals for further proceedings May 24, 2007

Shelley WETHERELL,
Janell Stradtner,
and Friends of Douglas County,
*Respondents on Review,*

*v.*

DOUGLAS COUNTY,
*Respondent on Review,*

*and*

GREAT AMERICAN PROPERTIES
LIMITED PARTNERSHIP,
*Petitioner on Review.*

(LUBA 2005-045; CA A129999; SC S53437)

Shelley WETHERELL,
*Respondent on Review,*

*v.*

DOUGLAS COUNTY,
*Respondent on Review,*

*and*

Randy WALKER
and Dannette Walker,
*Petitioners on Review.*

(LUBA 2005-075; CA A130181; SC S53438)
(Consolidated for argument and opinion)

160 P3d 614

Stephen Mountainspring, of Dole, Coalwell, Clark, Mountainspring, Mornarich & Aitken, P.C., Roseburg, argued the cause and filed the briefs for petitioners on review Great American Properties and Randy and Dannette Walker.

Carrie A. Richter, of Garvey Schubert Barer, Portland, argued the cause for respondents on review Shelley Wetherell, Janell Stradtner, and Friends of Douglas County.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause and filed the briefs for *amicus curiae* Land Conservation and Development Commission. With her on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Andrea Bushnell, Salem, filed the briefs for *amicus curiae* Oregon Association of Realtors.

BALMER, J.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, Balmer, and Kistler, Justices.**

---

** Carson, J., retired December 31, 2006, and did not participate in the decision of this case. Walters and Linder, JJ., did not participate in the consideration or decision of this case.

## BALMER, J.

These two separate land use disputes, which we consolidated for argument and decision, require us to decide the validity of an administrative rule that prohibits considering "profitability" and "gross farm income" in determining whether land is "agricultural land" that must be preserved under Goal 3 of Oregon's land use planning policy. Petitioners Great American Properties Limited Partnership (Great American) and Randy and Dannette Walker (the Walkers), owners of separate parcels of land in Douglas County, challenged decisions of the Land Use Board of Appeals (LUBA) that relied upon that rule. The Court of Appeals held that the rule's prohibition on considering gross farm income conflicted with the statutory definition of "farm use" that is incorporated in Goal 3 and, therefore, that the rule was invalid in part; however, the Court of Appeals upheld the rule's prohibition of the consideration of profitability. For the reasons that follow, we conclude that both the prohibition on considering gross farm income and the prohibition on considering profitability are invalid. We therefore affirm in part and reverse in part the Court of Appeals decisions in both the Walkers' case and the Great American case, and we remand those cases to LUBA.

### FACTUAL BACKGROUND

The facts that are pertinent to the issue before us are undisputed. For years, Douglas County has zoned the two properties at issue here for "exclusive farm use—grazing" and has designated them in the county's comprehensive plan as "farm forest transitional." Petitioners each applied to the county for changes in the zoning designation and comprehensive plan, arguing that their properties no longer should be classified as agricultural or forest lands and no longer should be set aside exclusively for farm or forest uses under statewide planning goals. They contended that the lands were no longer productive and could not profitably be used for farming or grazing. They also asked the county to change the existing zoning designations to allow the creation of five-acre rural residential lots on their properties.

Several individuals and an organization known as Friends of Douglas County appeared in the proceedings

before the county to oppose the applications. The county, however, granted the applications. The county's decisions turned, in part, on expert assessments of each property that concluded that neither parcel of land could be farmed for profit at a commercial level of productivity. With regard to Great American's property, the county adopted the experts' findings that, in light of the relative infertility of the property's soil, its shallowness, and lack of irrigation in the area, the "subject property may well be suitable for farm use as a lifestyle, but is poorly suited for farm use to make a profit." Among other things, the experts stated that, while 12 percent of the 160-acre parcel was suitable for growing grapes, it nevertheless would be "impossible to establish a commercial vineyard on the subject property" as a whole. Experts also opined that, although the property could support an average of 17 animal units per year through grazing, that number of livestock was "far below that of accepted farming practices for livestock grazing in Western Oregon." As to the Walkers' property, experts made similar assessments, concluding, among other things, that (1) terrain and soil limitations made the property unsuitable for general crop farming, including "commercial vineyard or Christmas tree production"; and (2) the 26-acre parcel's grazing capacity of approximately nine cattle per year "does not meet farm use standards because of the low productivity." Based on those findings, the county concluded that neither property qualified as "agricultural land" under OAR 660-033-0020(1)(a)(B) or (C), or (3)(b).[1] The county granted petitioners' requests that the comprehensive plan and zoning map designations for the properties be changed to allow five-acre rural residential lots.

## PROCEEDINGS FOLLOWING COUNTY LAND USE DECISIONS

Friends of Douglas County and two individuals who had appeared in the proceedings before the county, including Wetherell, appealed the county's decision with respect to the

---

[1] The county also determined that neither parcel was "forest land" within the meaning of Goal 4 of Oregon's land use planning policy. LUBA reversed that determination, and the Court of Appeals affirmed LUBA's decision. No party petitioned for review of that decision, and that issue is not before this court.

Great American property to LUBA. Wetherell appealed the county's decision with respect to the Walker property to LUBA.[2] LUBA remanded the county's rezoning determinations for both the subject properties, because it concluded that the county improperly had considered evidence that the properties could not be used profitably for farming or agricultural purposes. In both cases, LUBA based its decision, in substantial part, on OAR 660-033-0030, an administrative rule aimed specifically at identifying agricultural land. Paragraph (5) of the rule provides:

> "Notwithstanding the definition of 'farm use' in ORS 215.203(2)(a), profitability or gross farm income shall not be considered in determining whether land is agricultural land or whether Goal 3, 'Agricultural Land,' is applicable."

Under that rule, LUBA reasoned, direct consideration of the "profitability" of the land or of the "gross farm income" that could be generated from the land was improper when determining whether the land was, in fact, agricultural land that must remain zoned for that exclusive purpose. Because LUBA remanded to the county for it to determine whether the land was agricultural land without any direct consideration of profitability, LUBA did not consider Wetherell's alternative argument that the county improperly had based its decision on a determination that the land would not support "commercial" agriculture.

Great American and the Walkers filed separate petitions for judicial review of the LUBA decisions, arguing that OAR 660-033-0030(5) was invalid because the rule conflicted with the statutory definition of "farm use" in ORS 215.203(2)(a). That definition provides, in part, that " 'farm use' means the current employment of land for the primary purpose of obtaining a *profit in money*" by raising crops or animals or engaging in other farm activities. (Emphasis added.) Petitioners asserted that the rule, by barring consideration of "profitability" or "gross farm income," necessarily conflicted with the "profit in money" part of the statutory definition of "farm use" that is used in Goal 3.

---

[2] For convenience, we refer to the parties that appealed the cases to LUBA and that are respondents on review in this court, collectively, as "Wetherell."

The Court of Appeals, in an opinion dealing with the Great American property, agreed. *Wetherell v. Douglas County (A129999)*, 204 Or App 732, 132 P3d 41 (2006).[3] The Court of Appeals first noted that, under Goal 3, "agricultural land" encompassed, among other land, land in Western Oregon "suitable for 'farm use'" and that Goal 3 expressly incorporated the definition of "farm use" in ORS 215.203(2)(a).[4] The court then observed that, in *1000 Friends v. Benton County*, 32 Or App 413, 429, 575 P2d 651, *rev den*, 284 Or 41 (1978), it previously had defined "profit in money" in ORS 215.203(2)(a) to mean "gross income" and concluded that:

> "OAR 660-033-0030(5) is invalid as conflicting with Goal 3 insofar as it precludes consideration of either 'profitability *or* gross farm income' in determining whether land is 'agricultural land.' The rule's exclusion of consideration of 'gross income' is directly at odds with our holding in *1000 Friends* that Goal 3's incorporation of ORS 215.203(2)(a)'s 'farm use' definition includes 'profit in money' which means 'gross income.'"

*Wetherell (A129999)*, 204 Or App at 747 (emphasis in original). In a footnote, the Court of Appeals also stated that, to

---

[3] The court then decided the case involving the Walker property in a brief per curiam decision citing its opinion in the Great American property case. *Wetherell v. Douglas County (A130181)*, 204 Or App 778, 132 P3d 50 (2006).

[4] The full text of ORS 215.203(2)(a) provides:

"As used in this section, 'farm use' means the current employment of land for the primary purpose of obtaining a profit in money by raising, harvesting and selling crops or the feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or honeybees or for dairying and the sale of dairy products or any other agricultural or horticultural use or animal husbandry or any combination thereof. 'Farm use' includes the preparation, storage and disposal by marketing or otherwise of the products or by-products raised on such land for human or animal use. 'Farm use' also includes the current employment of land for the primary purpose of obtaining a profit in money by stabling or training equines including but not limited to providing riding lessons, training clinics and schooling shows. 'Farm use' also includes the propagation, cultivation, maintenance and harvesting of aquatic, bird and animal species that are under the jurisdiction of the State Fish and Wildlife Commission, to the extent allowed by the rules adopted by the commission. 'Farm use' includes the on-site construction and maintenance of equipment and facilities used for the activities described in this subsection. 'Farm use' does not include the use of land subject to the provisions of ORS chapter 321, except land used exclusively for growing cultured Christmas trees as defined in subsection (3) of this section or land described in ORS 321.267(3) or 321.824(3)."

the extent that the reference to "profitability" in OAR 660-033-0030(5) could be read to mean profitability in the traditional sense of income minus expenses, its decision in *1000 Friends* had upheld the rule's preclusion of profitability so defined. *Wetherell*, 204 Or App at 747 n 11. The Court of Appeals thus affirmed LUBA's conclusion that profitability could *not* be considered in determining whether the land was agricultural land. *Id.*[5]

The Court of Appeals remanded both cases to LUBA, directing LUBA to "recraft its remand instructions to the county in light of our conclusion that OAR 660-033-0030(5) is invalid insofar as it precludes consideration of 'gross income.' " *Id.* at 748 (footnote omitted); *Wetherell v. Douglas County (A130181),* 204 Or App 778, 132 P3d 50 (2006) (citing *Wetherell (A129999)* and reversing and remanding to LUBA for reconsideration).

Although petitioners prevailed, in part, in the Court of Appeals, they nevertheless filed petitions for review, which we granted. As we describe in greater detail below, petitioners, supported by *amicus curiae* Oregon Association of Realtors, argue that the Court of Appeals erred in its interpretation of ORS 215.203(2)(a) and, therefore, in the remand instructions that it gave LUBA. In their view, the reference in ORS 215.203(2)(a) to "profit in money" means "net profit"—revenues minus expenses—rather than "gross income," as the Court of Appeals held, and they argue that the challenged rule is invalid in its entirety. Specifically, petitioners contend that, for the purposes of ORS 215.203(2)(a), "profit" has a tax-derived definition that refers—as the Oregon Tax Court held in *Everhart v. Dept. of Rev.*, 15 OTR 76 (1999)—to net operating income after deducting operating expenses. They argue that "profit" should be read the same way here.

---

[5] In reaching both those conclusions, the Court of Appeals relied, as a matter of *stare decisis*, on its earlier decision in *1000 Friends v. Benton County*, noting that the decision was "not plainly wrong." *Wetherell*, 204 Or App at 747. The court acknowledged, however, that its holding in the earlier case was based on predicates that were "curious" and "perhaps counterintuitive." *Id.* at 743.

Wetherell[6] and *amicus curiae* Land Conservation and Development Commission (LCDC)[7] disagree with petitioners' proposed definition of "profit in money" as "profit" in the tax sense, and they agree with the Court of Appeals' rejection of that definition. However, they disagree with the Court of Appeals' conclusion that ORS 215.203(2)(a) permits the consideration of "gross farm income" and with that court's related holding that OAR 660-033-0030(5) is invalid to the extent that it prohibits consideration of "gross farm income." They argue that the disputed rule is valid in its entirety.

LCDC asks this court to "hold that the rule is valid as to profitability[ ] and [to] affirm the decision of [LUBA] holding that the county improperly considered profitability in determining suitability for farm use." LCDC notes that, under Goal 3, "agricultural land" includes, in addition to specific soil classes that are particularly suited for farming, soils outside those classes that are nevertheless

> *"suitable for farm use* as defined in ORS 215.203(2)(a), taking into consideration soil fertility; suitability for grazing; climatic conditions; existing and future availability of water for farm irrigation purposes; existing land use patterns; technological and energy inputs required; and accepted farming practices[.]"

---

[6] Wetherell filed a brief in this court only in the Great American case. Because Wetherell also is a respondent on review in the Walker case and the legal arguments in her Great American brief apply equally to the Walker case and are consistent with her arguments before LUBA and the Court of Appeals, we refer to her Great American brief.

[7] Because the issues raised in this case represent important questions of first impression regarding Oregon land use statutes and rules, we invited the Department of Justice to submit an *amicus curiae* brief on behalf of LCDC. Among other things, LCDC now asks the court to remand this case to the Court of Appeals with instructions to allow LCDC to intervene as a party below to defend the validity of OAR 660-033-0030(5) and the rule's relationship to ORS 215.203(2)(a). LCDC, however, has always been able to intervene in this case as a matter of right under the Oregon Rules of Appellate Procedure. ORAP 4.60 provides that, except where some other procedure is provided by statute or rule, the procedures for judicial review of final LUBA orders are the same as those generally used for review of administrative proceedings. On judicial review of such administrative proceedings, ORAP 4.40 allows an agency whose "order, rule, ruling, policy or other action" is at issue in the proceeding to intervene before either the Court of Appeals or the Supreme Court simply by filing a brief at the same time the respondent's brief is due.

OAR 660-033-0020(1)(a)(B) (emphasis added). LCDC then contends that, because the land at issue here falls within that "suitable for farm use" category, *neither* actual net profit *nor* gross farm income are appropriate factors to use in determining whether such property is agricultural land. Specifically, LCDC argues that the rule set out above focuses the "suitability" determination on the characteristics of the land itself and whether such land can be adapted for farming notwithstanding its current use. The characteristics of "profitability" and "gross farm income," LCDC maintains, are not only easily manipulated, but, more importantly, they are not inherent characteristics of land. Therefore, OAR 660-033-0030(5) properly prohibits a factfinder from considering them in determining whether particular land is agricultural land for purposes of Goal 3. For that reason, LCDC argues, LUBA correctly decided this case.

## AGRICULTURAL LAND AND GOAL 3

We begin by emphasizing the specific issue before this court. We are not asked to determine whether the county's decision regarding petitioners' properties was correct or the weight to be given testimony that a particular property is "profitable" or not or whether it can generate "gross farm income" or not. Rather, the issue presented instead involves the kind of information that the county properly may *consider* in making a land use decision involving agricultural land under Goal 3.

We turn to a brief overview of Oregon's agricultural land use policy. The legislature's policy regarding agricultural land was set out almost 35 years ago and seeks to preserve "a maximum amount of the limited supply of agricultural land" in the state. ORS 215.243. That statute provides:

"The Legislative Assembly finds and declares that:

"(1)    Open land used for agricultural use is an efficient means of conserving natural resources that constitute an important physical, social, aesthetic and economic asset to all of the people of this state, whether living in rural, urban or metropolitan areas of the state.

> "(2)    *The preservation of a maximum amount of the limited supply of agricultural land is necessary to the conservation of the state's economic resources and the preservation of such land in large blocks is necessary in maintaining the agricultural economy of the state and for the assurance of adequate, healthful and nutritious food for the people of this state and nation.*
>
> "(3)    Expansion of urban development into rural areas is a matter of public concern because of the unnecessary increases in costs of community services, conflicts between farm and urban activities and the loss of open space and natural beauty around urban centers occurring as the result of such expansion.
>
> "(4)    Exclusive farm use zoning as provided by law, substantially limits alternatives to the use of rural land and, with the importance of rural lands to the public, justifies incentives and privileges offered to encourage owners of rural lands to hold such lands in exclusive farm use zones."

ORS 215.243 (emphasis added).

The legislature has directed LCDC to implement Oregon statutes by adopting land use planning "goals" that "set out broad objectives for land use planning in Oregon." *Save Our Rural Oregon v. Energy Facility Siting*, 339 Or 353, 361, 121 P3d 1141 (2005); *see also* ORS 197.225 (LCDC "shall adopt goals and guidelines" for government agencies to use in preparing comprehensive land use plans). The legislature also authorized LCDC to adopt *rules* to implement the land use planning statutes and goals, ORS 197.040(1)(b), and all parties agree that LCDC's rules are valid only if they are consistent with both the applicable statutes and goals. *See City of West Linn v. LCDC*, 200 Or App 269, 275-76, 113 P3d 935, *rev den*, 339 Or 609 (2006) (so stating, noting that goals occupy a "preferred position" over rules). Pursuant to the legislature's mandate, LCDC has created and implemented 19 goals for comprehensive planning in Oregon.[8] At issue in this case is Goal 3 (Agricultural Lands), which is meant to facilitate the preservation of agricultural land, as directed by ORS 215.243. Goal 3 provides, in part:[9]

---

[8] The 19 policy areas encompassed by those goals are set out at OAR 660-015-0000, OAR 660-015-0005, and OAR 660-015-0010.

[9] Like the other statewide planning goals adopted by LCDC, the actual text of Goal 3 and the guidelines for its implementation are not codified in either the

"Agricultural lands shall be preserved and maintained for farm use, consistent with existing and future needs for agricultural products, forest and open space and with the state's agricultural land use policy expressed in ORS 215.243 and 215.700."[10]

In the definition section of Goal 3, "agricultural land" is defined, as noted previously, to include land that consists predominantly of certain soil types "and other lands which are *suitable for farm use*" taking into consideration various factors. (Emphasis added.) The dispute at issue here relates to the "suitable for farm use" aspect of Goal 3. "Farm use" in Goal 3 is defined simply "as set forth in ORS 215.203," a statute that we quoted previously. 342 Or at 672 n 4.

With that background, we return to the issue that this case presents. Under Goal 3, land must be preserved as agricultural land if it is suitable for "farm use" as defined in ORS 215.203(2)(a), which means, in part, "the current employment of land for the primary purpose of obtaining a *profit in money*" through specific farming-related endeavors. OAR 660-033-0030(5), however, expressly *prohibits* consideration of "profitability or gross farm income" as factors in Goal 3 land determinations. (Emphasis added.) If application of the statutory phrase "profit in money" permits or requires a local government to consider "profitability or gross farm income," then the rule directly conflicts with the statute (and with Goal 3, which refers to the statute) and the rule is invalid. The question then is whether such a conflict exists.

## DEFINITION OF "PROFIT IN MONEY"

To answer that question, we must construe the phrase "profit in money" in ORS 215.203(2)(a) and the terms "profitability" and "gross farm income" in OAR 660-033-0030(5). In interpreting a statute, this court's task is to give effect to the legislature's intent. *PGE v. Bureau of Labor and*

---

Oregon Revised Statutes or the Oregon Administrative Rules. Instead, LCDC has set out all the goals as individual publications that are available for review at the agency or online.

[10] As a matter of state policy, ORS 215.700 allows "certain owners of less productive land an opportunity to build a dwelling on their land[.]" ORS 215.700(1). Because petitioners seek to subdivide their property rather than build a single dwelling on it, ORS 215.700 is inapplicable in this particular case.

*Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). To do so, we begin by considering the text and context of the statute, *id.* at 610-11, giving "words of common usage * * * their plain, natural, and ordinary meaning." *Id.* at 611. A statute's context "includes other provisions of the same statute and other related statutes, as well as the preexisting common law and the statutory framework within which the law was enacted[.]" *Denton and Denton*, 326 Or 236, 241, 951 P2d 693 (1998) (internal citations omitted). This court does not "look at one subsection of a statute in a vacuum; rather, we construe each part together with the other parts in an attempt to produce a harmonious whole." *Lane County v. LCDC*, 325 Or 569, 578, 942 P2d 278 (1997). In construing administrative rules, our task is the same: we must discern the meaning of the words used, giving effect to the intent of the body that promulgated the rule. *Tye v. McFetridge*, 342 Or 61, 69, 149 P3d 1111 (2006). To do so, we follow the same methodology for interpreting rules as for construing statutes. *Id.*

We begin with the text of the statute itself. The legislature did not define "profit," as that term is used in ORS 215.203(2)(a). Similarly, LCDC did not define "profitability" or "gross farm income" in the rule that it adopted to implement Goal 3. Moreover, this court has not interpreted any of those terms in the context of the statutes and rules at issue in this case.[11] We therefore begin by looking to the dictionary for the "plain, natural, and ordinary" meaning of the term "profit." As is so often the case, the dictionary offers several plausible definitions:

> "**1** : an advantage, benefit, accession of good, gain, or valuable return esp. in financial matters, education, or character development * * * **2** : the excess of returns over expenditures in a transaction or series of transactions: as **a** : the excess of the price received over the price paid for

---

[11] In *Meeker v. Board of Commissioners*, 287 Or 665, 678 n 6, 601 P2d 804 (1979), this court, in a case involving the subdivision of agricultural land, specifically declined to decide "the question of 'farm use' under ORS 215.203(2)(a)" and resolved the case by concluding that evidence supported the county's determination that the land would be more agriculturally productive if subdivided. In a concurring opinion, Justice Holman discussed the statute and pointed out that the parties had failed to address the question whether the land, if subdivided, could be used "for the purpose of obtaining a profit in money," and therefore constitute "farm use." 287 Or at 679-80 (Holman, J., concurring).

goods sold—opposed to *loss* **b** **:** the excess of the price received over the cost of purchasing and handling or of producing and marketing goods **3a** (1): net income (as in a business) usu. for a given period of time (2): a benefit or advantage accruing from the management, use, or sale of property, from the carrying on of any process of production, or from the conduct of business **b** **:** the income of invested property not including an appreciation in market value. * * *."

*Webster's Third New Int'l Dictionary* 1811 (unabridged ed 2002).

As used in the statutory definition of "farm use," the word "profit" is modified by the words "in money." For that reason, we reject the first definition quoted above, under which "profit" could be *any* "advantage" or "benefit," because that definition would include a sentimental or psychological benefit to the ownership of land, which the statute, by using the words "profit in money," clearly excludes. The second sense of the word "profit" quoted above includes both the concepts of monetary "returns" or "price received" *and* the "expenditures" or "cost" associated with producing those returns or receipts, and defines profit as the "excess" of the former over the latter. The third sense similarly incorporates the concept of revenues minus expenses by referring to "net income," which the dictionary defines as "the balance of gross income remaining after deducting related costs and expenses usu[ally] for a given period and losses allocable to the period." *Id.* at 1520. Although several of the specific subsenses of "profit" provided by the dictionary—such as those referring to the purchase and resale of goods or the "income of invested property"—do not apply to the employment of land for "farm use," the second and third senses described in the dictionary demonstrate that "profit in money" must include some consideration of expenses or costs, as well as of revenues or income.

Two other definitions are also relevant here. "Profitability" means the quality or state of "bringing or yielding benefits or gains," *id.* at 1811, and its specific meaning in the context of this case turns on the proper definition of "profit." "Gross" in conjunction with "income" means consisting of "an overall total exclusive of deductions." *Id.* at 1002.

■ Applying those definitions to the statute and rule at issue, we conclude that in determining whether land is "suitable" for "farm use"—defined in ORS 215.203(2) as "the current employment of the land for the primary purpose of obtaining a profit in money" by engaging in specified farm or agricultural activities—a local government may not be precluded from considering the costs or expenses of engaging in those activities. Each of the relevant definitions of "profit" discussed above uses that word to mean the "excess" or the "net" of the gain or receipts from the particular activity over the associated costs or expenditures, and we conclude that the statute refers to "profit" in that sense.

We therefore reject the alternative definitions offered by the Court of Appeals and by petitioners. Nothing in the words of ORS 215.203(2)(a) requires, or provides any support for, the Court of Appeals' definition of the word "profit" to mean "gross income." *Evidence* of the gross income that has been or could be generated from the farm use of a parcel of land may well be relevant in determining whether the land is or could be employed for the "primary purpose of obtaining a profit," but, to put it bluntly, "profit" does not mean "gross income."[12]

■■ Similarly, petitioners' proposed definition of profit to mean only "net operating profit" also is inconsistent with ORS 215.203(2)(a), because it focuses on current or potential profitability in a tax or accounting sense, while that statute and Goal 3 require the local government to determine whether the land is "suitable" for current use "for the *primary purpose* of obtaining a profit in money" through certain

---

[12] As noted previously, 342 Or at 672, the Court of Appeals followed its prior interpretation of ORS 215.203 in *1000 Friends. 1000 Friends*, however, was based on a provision of the statute that had been repealed by the legislature in 1973. Prior to that year, the statute qualified the "profit in money" requirement with a "gross income" clause that established a threshold of current commercial activity as part of its definition of "farm use." *See* ORS 215.203(2)(b) (1971) (providing that land not be regarded as used for making a profit in money "if the whole parcel has not produced a gross income from farm uses of $500 per year for three of the [last] five calendar years[.]"). The legislature deleted the gross income test in 1973. Or Laws 1973, ch 503, § 3. That action eliminated any statutory basis from which to infer that the landowner must attain a particular level of *current* economic activity for land to be classified as "farm use" land under the statute. For that reason, in addition to the reasons discussed in the text, we reject the rationale that the Court of Appeals adopted in *1000 Friends* and that it adhered to in this case.

agricultural or farm activities. (Emphasis added.) As this court has been careful to recognize, "[l]and use laws reflect different policies than tax laws." *King Estate Winery, Inc. v. Dept. of Rev.*, 329 Or 414, 422, 988 P2d 369 (1999). With respect to "farm use" determinations for tax purposes, the legislature has stated its intent, in part, to ensure that "*bona fide farm properties* be assessed * * * at a value that is exclusive of values attributable to urban influences or speculative purposes." ORS 308A.050 (emphasis added). In such a context, strictly defining "profit" as a current year income-after-expenses accounting calculation is appropriate, because it allows for a more precise description of the discrete class of properties that are entitled to certain tax benefits due to their *current* operation as bona fide farms. In contrast, the identification of land that is "suitable for farm use" under Goal 3 can involve the consideration of factors as diverse as soil type, water availability, land use patterns, required energy inputs, and accepted farming practices.[13] Land can be suitable for economically successful and sustainable farm use and yet the landowner, because of tax and accounting concepts such as accelerated depreciation and loss carry-forwards, legitimately may show a net operating loss from such use. For those reasons, petitioners' proposed tax-based definition of "profit in money" to mean *only* net operating income after deducting operating expenses is inconsistent with the text and context of ORS 215.203(2)(a). Nevertheless, as set forth above, petitioners are correct to the extent that they argue that net operating profit properly can be *considered* in determining whether land can be employed for the primary purpose of obtaining a profit in money.

■ We further conclude that the meaning of "profitability," as used in OAR 660-033-0030(5), essentially mirrors that of "profit." For the reasons described above, that rule's

---

[13] Moreover, the identification of land that is "suitable for farm use" *includes* "[l]and lying fallow for one year"; nonproductive "[w]asteland" and "[w]ater impoundments" in an exclusive farm use zone that are adjacent to and in common ownership with farm use land; and land that is idle for a year because of the farmer's illness. ORS 215.203(2)(a)(B), (E), (G), (I). In each of those examples, the specific land is undeniably *not* producing a profit, and yet the statute provides that the land nevertheless may be determined to be currently employed for a farm use within the meaning of the statute.

prohibition of any consideration of "profitability" in agricultural land use determinations conflicts with the definition of "farm use" in ORS 215.203(2)(a) and Goal 3, which permit such consideration. OAR 660-033-0030(5) is therefore invalid, because it prohibits consideration of "profitability." The factfinder may consider "profitability," which includes consideration of the monetary benefits or advantages that are or may be obtained from the farm use of the property *and* the costs or expenses associated with those benefits, to the extent such consideration is consistent with the remainder of the definition of "agricultural land" in Goal 3.

■   Finally, the prohibition in OAR 660-033-0030(5) of the consideration of "gross farm income" in determining whether a particular parcel of land is suitable for farm use also is invalid. As discussed above, "profit" is the excess or the net of the returns or receipts over the costs or expenses associated with the activity that produced the returns. To determine whether there is or can be a "profit in money" from the "current employment of [the] land * * * by raising, harvesting and selling crops[,]" a factfinder can consider the gross income that is, or could be, generated from the land in question, in addition to other considerations that relate to "profit" or are relevant under ORS 215.203(2)(a) and Goal 3.

■   We therefore hold that, because Goal 3 provides that "farm use" is defined by ORS 215.203, which includes a definition of "farm use" as "the current employment of land for the primary purpose of obtaining a profit in money[,]" LCDC may not preclude a local government making a land use decision from considering "profitability" or "gross farm income" in determining whether land is "agricultural land" because it is "suitable for farm use" under Goal 3. Because OAR 660-033-0030(5) precludes such consideration, it is invalid.[14] Accordingly, on remand, LUBA must reconsider its decision with respect to the county's land use determinations at issue here

---

[14] As discussed previously, LCDC has authority to adopt rules to implement the land use planning statutes and goals, and it may adopt rules regarding the manner in which "profit in money" should be considered by local governments making land use decisions. Given the wording of Goal 3 and ORS 215.203(2)(a), however, it may not, as we hold in this case, preclude local governments from even considering the "profitability" or "gross farm income" of land in determining whether the land is "suitable for farm use."

in light of that conclusion and our interpretation of the applicable statutes and rules.

Although profitability and gross farm income—both actual and potential—may be considered in determining whether land is suitable for farm use, we do not address the weight to be given to those considerations in any particular land use decision. In their arguments before LUBA, the Court of Appeals, and this court, the parties and *amici* appear to assume, at times, that, if particular land currently is "profitable" or produces "gross farm income," then that land necessarily meets the "farm use" test and is properly classified as agricultural land under Goal 3, whereas if the land is "unprofitable" for farming or produces no "gross farm income," then it necessarily is not agricultural land under Goal 3. The case before us, in its particular posture, does not present those issues. The determination that a particular parcel of land is "agricultural land" turns instead on the local government's conclusion, subject to review by LUBA and the courts, that the land is "*suitable* for farm use," taking into consideration the factors identified in Goal 3. (Emphasis added.) The only issue that we decide today is whether "profitability" or "gross farm income" can be *considered* by the local government in making its land use decision, and our decision is limited to holding that the rule prohibiting the local government even from considering such evidence is invalid.

The decisions of the Court of Appeals are affirmed in part and reversed in part. The decisions of the Land Use Board of Appeals are reversed, and the cases are remanded to the Land Use Board of Appeals for further proceedings.